UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
**AMANDA IANNOTTI**

Claimant,

-against-

**MEMORANDUM AND ORDER**
2:25-CV-4684-SJB

**COMMISSIONER OF SOCIAL SECURITY,**

Respondent.
--------------------------------------------------------------X
**BULSARA, United States District Judge:**

On August 13, 2021, Claimant Amanda Iannotti filed an application for Title II disability benefits, alleging that she had been disabled since May 30, 2017. A Social Security Administrative Law Judge ("ALJ") determined that Iannotti suffers from several severe impairments: obesity, obstructive sleep apnea, polycystic ovary syndrome, borderline personality disorder, bipolar disorder, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder. (Admin. Tr., Dkt. No. 6 at 17). Her application was denied on March 21, 2022, (*id*. at 14), and again following reconsideration on August 15, 2022. (*Id.*) She requested a hearing, which was held on May 1, 2024, (*id.*), and the ALJ issued a decision finding she was not disabled on July 26, 2024. (*Id.* at 28). The Appeals Council denied her request for review on June 17, 2025. (Admin. Tr. at 1). She then appealed to this Court pursuant to the Social Security Act, 42 U.S.C. § 405. Both sides have filed motions for judgment. (Claimant's Mem. in Supp. of Mot. for J. on the Pleadings dated Feb. 12, 2026 ("Claimant's Mot."), Dkt. No. 9; Respondent's Opp'n to Claimant's Mem. in Supp. of Mot. for J. on the Pleadings dated

Apr. 9, 2026 ("Respondent's Opp'n"), Dkt. No. 10). Claimant seeks a remand for further development of the record, but nothing else. (Claimant's Mot. at 2). For the reasons explained herein, Claimant's motion is granted, and the case is remanded to the ALJ.

The Court's task is to determine whether upon a "plenary review of the administrative record" there is "substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Cichoki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam)). The "substantial evidence standard is 'not high.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

A Social Security Administration ALJ must follow a five-step process, outlined in the Code of Federal Regulations (*see* 20 C.F.R. § 404.1520(a)(4)(i)–(v)), to determine whether a claimant is disabled. *See generally Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (detailing five-step process and associated burden-shifting).

Claimant advances three arguments suggesting that there was legal error warranting remand to the ALJ.

*First*, she argues that the ALJ failed to fully "develop the record" because he failed to obtain treatment records from Claimant's hospitalization at Mather Memorial Hospital from May to June 2021, where she received mental health treatment. (Claimant's Mot. at 12–13).

"The Social Security Act does require that the ALJ 'develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability.'" *Borelli v. Bisignano*, No. 24-3077, 2025 WL 2785600, at *1 (2d Cir. Oct. 1, 2025) (quoting 42 U.S.C. § 423(d)(5)(B)). "The ALJ, 'may choose not to seek additional evidence or clarification from a medical source if [the ALJ knows] from experience that the source either cannot or will not provide the necessary evidence.'" *Id.* (quoting 20 C.F.R. § 404.1520b(b)(2)(i)) (cleaned up).

Here, Claimant's counsel first filed a letter on April 24, 2024, informing the ALJ that they had sought—but not yet received—medical records from three doctors. (Admin. Tr., attached as Ex. 16E, at 376). The request makes no mention of Mather Memorial Hospital. At the hearing, the ALJ kept the record open to permit submission of the records referenced in Exhibit 16E. (Admin. Tr. at 40) ("ALJ: All right. I'll keep the record open for—we'll go two weeks through the 15th for those records noted in 16E. If additional time is needed, I just ask you to reach out in writing within that time, and I'll address it."). Claimant's counsel then filed a letter on May 13, 2024 to the ALJ, referencing the three doctors again, but indicated that the records remained outstanding, and asked the ALJ for a further two weeks to submit them. (Admin. Tr., attached as Ex. 20E, at 383). On June 28, 2024, Claimant's counsel submitted a final letter stating "[m]y office has obtained and submitted all records that are available, and at this time consider the record complete. We request that Your Honor proceed with decision making." (Admin. Tr., attached as Ex. 21E, at 384).

Respondent contends that this last letter absolved the ALJ from needing to seek the Mather Hospital records. Said differently, did counsel's affirmative statement that they "had submitted all records that are available," absolve the ALJ from having to obtain independently records from Mather Hospital? It did not. For one thing, Claimant's counsel was referring to—as the ALJ himself notes—medical records from three doctors. The only reasonable way to understand the June 28th letter is as a reference to the records of the three doctors, not all of Claimant's medical records. Indeed, the May 13th correspondence confirms this understanding—counsel was seeking an extension of time not for all records, but for the records from three doctors. In all the correspondence, there is no reference or allusion to Mather Hospital.

For another, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel[.]'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 88 F.3d 41, 47 (2d Cir. 1996)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("[T]he ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty . . . exists even when, as here, the claimant is represented by counsel.") (quotations omitted). There, however, must be "obvious gaps" to trigger any obligation to further develop the record, *Borelli*, 2025 WL 2785600, at *2 (quoting *Rosa*, 168 F.3d at 79 n.5), and there is no obligation to conduct inquiries known to be futile. *Id.*

Here, the gaps are plain and significant. In the second page of her appeal of the initial denial (the first page contains only basic biographic information), Claimant states

"Amanda Ziegler Iannotti attended a Partial Hospitalization program for 6 weeks in May and June of 2021 at Mather. Since then her conditions have worsened." (Admin. Tr., attached as Ex. 8E, at 325). She provided the mailing address and phone number of the medical records office of Mather Hospital in that filing. (*Id.* at 327–28). There is nothing to indicate that the ALJ inquired about records from this in-patient stay, or sought them from the provider. And the ALJ's decision contains no mention of the Mather hospitalization. This "[f]ailure to develop the record warrants remand." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018); *e.g.*, *Hilsdorf v. Commissioner of Social Security*, 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010) ("Where, as here, it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of his affirmative obligation to develop the record by a statement of counsel.").

Respondent's other arguments to the contrary are without merit. It contends that there were adequate mental health records from which the ALJ could have made a disability determination. But none of the records cited are from the May and June period in which Claimant was at Mather, but after her discharge. (*E.g.*, Admin. Tr., attached as Ex. 1F, at 393 (July 2021)). And it is simply counsel's speculation that the records would not reveal "symptoms or objective findings beyond what the existing record contains." (Respondent's Opp'n at 16). "The ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment. The Regulations articulate that claims concerning mental disorders require a robust examination that is sensitive to the dynamism of mental illnesses and the coping mechanisms that claimants develop to manage them[.]" *Estrada v. Comm'r of Soc. Sec.*, No. 13-CV-04278,

2014 WL 3819080, at *3 (S.D.N.Y. June 25, 2014) (citation omitted) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E) (2014)).[1] Such an examination was not possible without the relevant records from an in-patient hospitalization for mental health treatment. And Respondent's arguments about the need for her counsel to draw attention to Claimant's stay at Mather ignore the ALJ's independent obligation, even in a counseled case.[2] *Supra* at 3–4.

*Second*, Claimant contends that the ALJ reached conclusions about her obesity without the benefit of any medical opinion. Here, the ALJ concluded that obesity was one of Claimant's severe impairments. (Admin. Tr. at 17). But then he proceeded to evaluate the effects of that obesity based solely on his own opinion, with reference to Social Security regulations, but no medical opinions (other than to note that one doctor

---

[1] While the language of 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 was amended following *Estrada*, its substance remains largely present in the current regulation at § 12.00(C)(5)–(6) (2026).

[2] The authorities relied on by Respondent are dissimilar. In *Curley v. Comm'r of Soc. Sec. Admin.*, "when the ALJ discussed the medical records with Curley and his attorney at the beginning of the hearing and asked whether anything was missing, Curley did not state that he had any physical therapy records that needed to be obtained." 808 F. App'x 41, 44 (2d Cir. 2020). That kind of generalized discussion did not take place at this hearing. The ALJ proceeded immediately to discuss the records referenced in counsel's letter, i.e. the three doctors, and did not ask whether the record was otherwise complete. *Bushey v. Colvin* is similarly inapposite because there the claimant could not identify any specific evidence that was lacking, 607 F. App'x 114, 115 (2d Cir. 2015), and *DeChirico v. Callahan* involved a failure to see a prior disability file from an earlier case. 134 F.3d 1177, 1183–84 (2d Cir. 1998). And finally, *Dejesus Gonzalez v. Comm'r of Soc. Sec.* involved an ALJ's failure to request records of a doctor who treated the claimant for a mere 30 minutes. No. 16-CV-4612, 2017 WL 1051119, at *4 (E.D.N.Y. Mar. 19, 2017).

noted Claimant was obese). (Admin. Tr. at 18–19). Respondent offers little in response, other than to say Claimant's counsel should have suggested to the ALJ that a medical opinion was necessary. Again, this confuses the independent obligation of an ALJ. And it is error for an ALJ to reach his own medical conclusion without benefit of relevant medical opinions. "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *e.g.*, *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). And if there is a medical opinion gap, either the ALJ cannot reach the conclusion or must develop the record independently. *E.g.*, *Burger v. Astrue*, 282 F. App'x 883, 884–85 (2d Cir. 2008) ("[T]he ALJ was obliged himself to develop the medical record more fully to ensure an accurate assessment of Burger's residual functional capacity. Indeed, the relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record."); *Aung Winn v. Colvin*, 541 F. App'x 67, 70 (2d Cir. 2013) ("Winn also argues that, once the ALJ determined that Winn's mental impairment should be part of the case, the ALJ had an obligation to develop the record in the issue, which the ALJ failed to discharge. We agree.").

*Third*, Claimant argues that the ALJ erred by failing to separately consider a discreet period of disability—from December 31, 2020 through September 2023—when

she suffered from obstructive sleep apnea and would wake up many times each night. (Claimant's Mot. at 3). The Court agrees. Discussion of this closed period of time appears nowhere in the ALJ's decision. (Admin. Tr. at 14–28).

Respondent's arguments to the contrary are without merit. Respondent argues that the ALJ acknowledged the effect of the sleep apnea, but noted that it had resolved in 2023. In other words, Respondent contends that on a going-forward basis the apnea was not significant enough to warrant a disability finding. But that ignores the relevant point—the ALJ failed to consider the period in which the apnea was present. And that is error. *Berry v. Comm'r of Soc. Sec.*, No. 22-CV-7615, 2024 WL 1382765, at *5 (E.D.N.Y. Mar. 21, 2024) ("[I]t is not clear that the ALJ considered a closed period of disability at all[.]"). Then Respondent argues that during the limited period the sleep apnea was not significant enough to constitute a disability, contending the effects of the apnea are "implausible" and inconsistent with medical records. (Respondent's Opp'n at 18). But these are determinations for the ALJ to make in the first instance—not for counsel to speculate about from its own view of the record untethered to the ALJ's decision. If these are the conclusions to be drawn from the evidence, then the ALJ can do so on remand. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision."); *e.g.*, *Aponte v. Sec'y, Dep't of Health & Hum. Servs.*, 728 F.2d 588, 592–93 (2d Cir. 1984) ("The Secretary's contention here is that

Aponte's claim was properly rejected because Aponte did not meet the requirements of § 12.04 part *B*. We see no indication, however, that this was the rationale of the ALJ. . . . In circumstances such as these, where the ALJ has stated no findings or conclusions with respect to a claim of disabling impairment . . . We therefore remand the matter to the Secretary."); *Smith v. Berryhill*, No. 17CIV5639, 2018 WL 4565144, at *4 (S.D.N.Y. Sept. 24, 2018) ("The ALJ may find upon review of the record as a whole that there is no closed period of disability. From the present record, however, it is not clear that the ALJ considered a closed period of disability at all."). "On remand, the Court directs the ALJ to consider expressly whether Plaintiff was disabled for any period of time greater than 12 months following the onset of her disability, even if more recent medical evidence suggests improvement in her physical condition." *Berry*, 2024 WL 1382765, at *5 (quotation omitted).

## CONCLUSION

The Commissioner's motion is denied; Claimant's motion is granted. And the case is remanded for further proceedings consistent with this opinion. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.
*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: September 21, 2026
Central Islip, New York